**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**RYAN DEE GARDNER,**

    **Petitioner,**

v.                                       **Civil Action No. 1:16CV110
Criminal Action No. 1:15CR22
(Judge Keeley)**

**UNITED STATES OF AMERICA,**

    **Respondent.**

**MEMORANDUM OPINION AND ORDER DENYING § 2255 MOTION
[DKT. NO. 1][1] AND DISMISSING CASE WITH PREJUDICE**

Pending before the Court is the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence filed by the pro se petitioner, Ryan Dee Gardner ("Gardner"), in which he alleges that he entered into an involuntary plea agreement based on ineffective assistance of counsel. For the reasons that follow, the Court **DENIES** Gardner's § 2255 motion (Dkt. No. 1), and **DISMISSES** this case **WITH PREJUDICE**.

**I. BACKGROUND**

Gardner was the sole defendant named in a one-count Information filed in this Court on February 11, 2015 (Case No. 1:15CR22, Dkt. No. 15). Pursuant to a written plea agreement, Gardner waived his right to have his case presented to a federal grand jury and pleaded guilty on February 12, 2015, to one count of

---

[1] All docket numbers, unless otherwise noted, refer to Civil Action Number 1:16CV110.

**MEMORANDUM OPINION AND ORDER DENYING § 2255 MOTION
[DKT. NO. 1] AND DISMISSING CASE WITH PREJUDICE**

distribution of oxycodone, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Case No. 1:15CR22, Dkt. Nos. 22; 24). Following the entry of Gardner's guilty plea, the Probation Officer prepared and disclosed a presentence report, which recommended that the Court apply a two-level sentencing enhancement under U.S.S.G. § 2D1.1(b)(1) for the possession of a firearm in connection with the offense.

Although Gardner, by counsel, filed an objection to the Probation Officer's recommendation, he later withdrew that objection (Case No. 1:15CR22, Dkt. No. 59 at 5-6). At sentencing, the Court applied the two-level enhancement under U.S.S.G. § 2D1.1(b)(1), and sentenced Gardner to 70 months imprisonment, the lowest end of the applicable guideline range, to be followed by 3 years of supervised release (Case No. 1:15CR22, Dkt. No. 32). Gardner did not appeal his conviction or sentence.

On June 7, 2016, Gardner filed his pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, which he later re-filed on the court-approved form (Dkt. Nos. 1, 5). In his motion, Gardner claims that he is entitled to relief under § 2255 based on the ineffective assistance of his counsel during plea

negotiations (Dkt. No. 5 at 5).[2] Specifically, Gardner contends that his counsel was ineffective for advising him that he would not receive a firearm enhancement at sentencing. Id. While Gardner's motion does not specify the precise relief sought, he requests discovery in the case, an evidentiary hearing, and the appointment of counsel. Id. at 13; Dkt. No. 16 at 6.

In its response, the government argues that Gardner has failed to satisfy the two-pronged analysis provided by Strickland v. Washington, 466 U.S. 668, 687 (1984), to establish a right to an amended sentence or new trial based upon ineffective assistance of counsel (Dkt. No. 15 at 6-11). In his reply, Gardner reiterates his contentions about his attorney's failure to correctly advise him about the potential sentence (Dkt. No. 16 at 2-5). Accordingly, the motion is now fully briefed and ripe for decision.

## II. STANDARDS OF REVIEW

**A.   Pro Se Pleadings**

The Court must liberally construe pro se pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Loe v. Armistead, 582 F.2d 1291,

---

[2] Although Gardner's motion asserts several additional grounds for relief, he concedes in his reply brief that those grounds "must be withdrawn" as procedurally defaulted (Dkt. No. 16 at 2). Accordingly, the Court will consider only the claim relating to the alleged ineffective assistance of his counsel.

1295 (4th Cir. 1978). A pro se petition is subject to dismissal, however, if the Court cannot reasonably read the pleadings to state a valid claim on which the petitioner could prevail. Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the petitioner's legal arguments for him, nor should it "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

**B.   § 2255 Motions**

Title 28 U.S.C. § 2255(a) permits federal prisoners, who are in custody, to assert the right to be released if "the sentence was imposed in violation of the Constitution or laws of the United States," if "the court was without jurisdiction to impose such sentence," or if "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." A petitioner bears the burden of proving any of these grounds by a preponderance of the evidence. See Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

### III. DISCUSSION

As noted, Gardner claims ineffective assistance of counsel relating to the advice his attorney allegedly provided prior to the entry of his guilty plea. Gardner argues that the erroneous advice

provided by his counsel during plea negotiations prevented him from entering a knowing and voluntary guilty plea. Specifically, Gardner asserts that his attorney was "ineffective" because he failed to correctly advise him about the applicability of a two-level sentencing enhancement under § 2D1.1(b)(1) (Dkt. Nos. 5 at 5).

For the reasons explained below, the Court concludes that, even assuming that counsel's performance was deficient, Gardner did not suffer any prejudice as required by the standard articulated in Strickland v. Washington, 466 U.S. 668 (1984).

A.  **Strickland Standard**

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to effective assistance of counsel during their criminal proceedings. The Court's review of Gardner's ineffective assistance of counsel claim is guided by the conjunctive, two-prong analysis outlined in Strickland:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

In order to satisfy Strickland's deficiency prong, a petitioner must demonstrate the objective unreasonableness of his attorney's performance. Id. at 688. Further, "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689. Thus, a reviewing court with the benefit of hindsight must not second-guess those decisions of counsel which, given the totality of the circumstances at the time of trial, "might be considered sound trial strategy." Id. (quoting Michel v. State of La., 350 U.S. 91, 101 (1955)). The Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" when evaluating whether counsel's performance was ineffective. Id. at 689.

In order to satisfy Strickland's prejudicial effect prong, "the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. Further, Strickland makes clear that either prong of its test for ineffective assistance of counsel may be analyzed first, and thus, if no prejudice is shown by a petitioner, a court

6

need not analyze counsel's performance. Id. at 697; Fields v. Att'y Gen. of Maryland, 956 F.2d 1290, 1297 (4th Cir. 1992), cert. denied, 506 U.S. 885 (1992).

**B.  Knowing and Voluntary Guilty Plea**

A criminal defendant's right to effective assistance of counsel extends to the plea-bargaining process. However, "[i]t is well-established that a voluntary and intelligent guilty plea forecloses federal collateral review of allegations of antecedent constitutional deprivations." Fields v. Att'y Gen. Of Maryland, 956 F.2d 1290, 1294 (4th Cir. 1992); see also Tollett v. Henderson, 411 U.S. 258, 266 (1973). A voluntary and intelligent guilty plea amounts to an admission of the material elements of the charged crime, McCarthy v. United States, 394 U.S. 459, 466 (1969); consequently, it generally constitutes a waiver of all claims relating to non-jurisdictional errors that occurred prior to the plea. United States v. Partlow, 301 Fed.Appx. 297, 298 (4th Cir. 2008)(citing Tollett, 411 U.S. at 267); see also United States v. McCleary, No. 95-6922, 1977 WL 215525 (4th Cir. May 1, 1997)(unpublished)).

"Thus[,] where a defendant does not challenge the jurisdiction of the courts 'power to enter the conviction of impose the

7

sentence,' 'the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary.'" United States v. Fabian, 798 F.Supp.2d 647, 669 (D. Md. 2011) (quoting United States v. Broce, 488 U.S. at 569 (1989)). When examining an ineffective assistance of counsel claim in the face of a guilty plea, the "focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea not the existence as such of an antecedent constitutional infirmity." Tollett, 411 U.S. at 266; see also Fields, 956 F.2d at 1297 n.17 (the [c]onduct of counsel occurring prior to entry of a guilty plea may be examined in evaluating the extent to which the prior representation influenced the voluntary and intelligent character of the guilty plea entered").

Moreover, a defendant who alleges ineffective assistance of counsel following the entry of a guilty plea, as Gardner does here, is subject to an even higher burden regarding Strickland's prejudice prong: he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhard, 474 U.S. 52, 59 (1985); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988), cert. denied, 488 U.S. 843 (1988).

**C.     Analysis**

In his motion, Gardner argues that, prior to entering a plea, his attorney "promised [him] vehemently" that if he pled guilty, "the government would forego" a two-level sentencing enhancement for the possession of a firearm in connection to the offense (Dkt. No. 5 at 5). Gardner contends that his counsel's performance fell below Strickland's objective standard because his counsel failed to properly inform him of his sentence exposure in accordance with the plea agreement (Dkt. Nos. 5 at 5; 16 at 2). He further contends that, due to his attorney's ineffectiveness, he was unable to make an intelligent decision on whether to enter a guilty plea or proceed to trial (Dkt. No. 16 at 2).

In Marchibroda v. United States, 368 U.S. 487 (1962), the Supreme Court vacated and remanded for further proceedings the decision of the Sixth Circuit Court of Appeals affirming a district court order that had denied a § 2255 petition without a hearing when that petition contained detailed factual allegations that challenged the voluntary nature of the defendant's plea. One year later, however, in United States v. Davis, 319 F.2d 482, 484-485 (6th Cir. 1963), the Sixth Circuit Court of Appeals commented on what it believed the proper reach of Marchibroda to be:

9

> We do not construe Marchibroda [ ], upon which appellant relies, as requiring a hearing in all cases in which a factual issue is raised by appellant's motion to vacate. In the Marchibroda case, the transcript of the arraignment shows that the District Judge accepted a plea of guilty from the defendant, who was represented by counsel, without questioning the defendant about it being entered voluntarily, free from any threats or coercion or promises of any kind.

Indeed, when the full protections of a Rule 11 hearing are present, "the representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). That is because "Rule 11 is intended to produce a complete record of the factors relevant to the voluntariness of the guilty plea and, thereby, to forestall subsequent controversy as to voluntariness." Raines v. United States, 423 F.2d 526, 530 (4th Cir. 1970).

In this case, Gardner had the full protection of a Rule 11 hearing. On February 12, 2015, Gardner appeared, with his counsel, before United States Magistrate Judge John S. Kaull. During that hearing, Magistrate Judge Kaull summarized the terms of the plea agreement in open court. See Plea Hearing Transcript, Case No.

1:15CR22, Dkt. No. 58 at 6-9. Gardner testified under oath that he had throughly reviewed the plea agreement with his counsel. Id. at 23. He further testified that he understood all of the terms and provisions of the plea agreement. Id. In addition, he testified that no one had threatened him or attempted to force him to plead guilty, and that it was his own free and voluntary decision to plead guilty. Id. at 27; 37. Finally, Gardner testified that he was completely satisfied with the legal assistance, the counseling, the actions, and the advice that his counsel provided him in the case. Id. at 22. He then admitted his guilt to Count One of the Information. Id. at 42-43.

Upon review, the Court finds that Gardner engaged in a long colloquy and at no time stated that his attorney had promised him a certain sentence or that he would not be subject to a particular sentencing enhancement. In fact, Gardner's assertion that his attorney "promised [him] vehemently" that he would not receive a two-level enhancement for the possession of a firearm is directly contradicted by his own statements during the colloquy. When Magistrate Judge Kaull asked Gardner if his attorney had made any promises regarding the actual sentence he would receive, Gardner replied that his counsel had not:

11

**GARDNER V. UNITED STATES**                                    1:16CV110
                                                                1:15CR22

**MEMORANDUM OPINION AND ORDER DENYING § 2255 MOTION**
**[DKT. NO. 1] AND DISMISSING CASE WITH PREJUDICE**

---

> THE COURT: **Did [your attorney] promise you how much time you were going to get, sir?**
>
> DEFENDANT: Did he promise me that?
>
> THE COURT: Yes, sir.
>
> DEFENDANT: **He didn't promise me anything.**
>
> \*\*\*
>
> THE COURT: **Do you understand that [your attorney] cannot promise you what your actual sentence is going to be or** any-or whether-**anything else?**
>
> DEFENDANT: **Yes I understand.**
>
> THE COURT: And the reason he can't do that is because only a District Judge sets the sentence and the District Judge isn't going to do that for some eight to ten weeks from now and the District Judge won't do it until she's-- he or she has received- . . . the Presentence Investigation Report and has had a chance to review it, any objections to it and had a sentencing hearing in your case. Do you understand that?
>
> DEFENDANT: Yes, sir.

See id. at 21 (emphasis added). And, when Magistrate Judge Kaull later engaged Gardner in a similar line of questioning about his exposure under the plea agreement, Gardner confirmed his understanding that his attorney could not guarantee his sentence in the case:

> THE COURT: Do you completely understand that you cannot take what [your attorney] showed you on the guideline chart as his promise to you or his guarantee to you that

> at sentencing Judge Keeley will see it the same way he did?
>
> DEFENDANT: Yes.
>
> THE COURT: And do you understand that if Judge Keeley does not see it the same way and imposes a sentence that is different from what [your attorney] may have projected on the guidelines, you will not then be able to withdraw your guilty plea?
>
> DEFENDANT: Yes, sir.
>
> THE COURT: And do you further understand that you won't be able to say but for what [your attorney] told me I would've not pled guilty; he was ineffective; I want to withdraw my guilty plea? Do you understand that, sir?
>
> DEFENDANT: Yes, sir.

<u>Id.</u> at 33.

Further, Gardner's signed plea agreement stated that the "[t]here have been no representations whatsoever by . . . the United States . . . , as to what the final disposition in the matter should or will be," and that "[t]here are no agreements, understandings or promises between the parties other than those contained in the agreement." (Case No. 1:15CR22, Dkt. No. 24 at 2, 4). These facts, which Gardner acknowledged during his plea hearing, would necessarily eliminate any belief that the government agreed to "forego" the two-level firearm enhancement or any belief that such an agreement would be meaningful at sentencing.

Finally, to the extent that Gardner argues that he was "prejudiced" by his counsel's advice because he could have otherwise raised a viable defense of "sentencing entrapment" or "sentencing manipulation" (Dkt. No. 16 at 5), this argument is also unavailing. According to Gardner, the evidence in the case would have provided for a viable defense of entrapment as it relates to the firearm involved in the offense conduct. Liberally construed, Gardner claims that had he known the firearm would be considered at sentencing, he would not have entered a guilty plea and would have insisted on going to trial, including on any firearm offenses that the government may have brought against him.

As discussed above, to satisfy Strickland's prejudice prong, Gardner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; Hooper, 845 F.2d at 475. "In many guilty plea cases, the 'prejudice' inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial." Hill, 474 U.S. at 59. For example, "where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution

of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." Id. (citing Evans v. Meyer, 742 F.2d 371, 375 (CA7 1984) ("It is inconceivable to us ... that [the defendant] would have gone to trial on a defense of intoxication, or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received")).

Here, Gardner has failed to show that there is a reasonable probability that "but for" his attorney's alleged failure to correctly advise him about the government's intent to seek a two-level firearm enhancement at sentencing, he would not have pleaded guilty and would have insisted on going to trial. Notably, Gardner did not plead guilty to a firearm offense. Nor was he even *charged* with a firearm offense in this case. Rather, Gardner pleaded guilty to the distribution of oxycodone. Thus, it is not "reasonably probable" that Gardner would have proceeded to trial on a defense of entrapment in a case involving one or more drug distribution charges, or "that if he had done so, would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received in the case." Evans, 742 F.2d at 375. In

short, Gardner has failed to show that his counsel's advice, even if deficient, affected the outcome of the plea process. Accordingly, Gardner's allegations are insufficient to satisfy the prejudice required by Strickland.

Moreover, regardless of whether Gardner's attorney was deficient in advising him about the potential application of the firearm enhancement, the plea colloquy further establishes that this alleged failure did not prejudice Gardner. During the Rule 11 hearing, Gardner confirmed that his attorney had thoroughly explored all potential alternatives to an admission of guilt in the case:

> THE COURT: Did you and [your attorney] discuss, explore with each other, whether there was any possible defense that you could raise to these charges?
>
> DEFENDANT: Yes, sir.
>
> THE COURT: After exploring them, did you come to a conclusion in your mind, on your own, that there were no defenses to use?
>
> DEFENDANT: Yes, sir.
>
> THE COURT: Did you tell [your attorney] about any and all witnesses you thought be able to help you? Is that- you're shaking your head no, is that correct?
>
> DEFENDANT: I mean we talked about it, yes, sir.
>
> THE COURT: Did [your attorney] interview them?

>   DEFENDANT: No, sir.
>
>   THE COURT: Is that because they weren't worthy of being
>   interviewed in your mind?
>
>   DEFENDANT: No, it wasn't that.
>
>   THE COURT: Why didn't you have him interview them?
>
>   DEFENDANT: I mean I just know I was guilty and there
>   wasn't no need to go through all of that.

See Case No. 1:15CR22, Dkt. No. 58 at 18-19.

Thus, based on Gardner's own unequivocal statements during the Rule 11 hearing, the Court finds that Gardner's assertions regarding the knowing and voluntary nature of his guilty plea are refuted by the record. And, even assuming that Gardner's attorney misadvised him about the possible application of a particular sentencing enhancement, any prejudice by this advice was cured by the language of the plea agreement and Gardner's own acknowledgments during the thorough plea colloquy.

### V. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant" in such cases. If the court denies the certificate, "the parties may not appeal the denial but may seek a certificate from

the court of appeals under Federal Rule of Appellate Procedure 22." 28 U.S.C. foll. § 2255(a).

The Court finds it inappropriate to issue a certificate of appealability in this matter because Gardner has not made a "substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. See <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336–38 (2003). Upon review of the record, the Court concludes that Gardner has failed to make the requisite showing, and **DENIES** a certificate of appealability.

## VI. CONCLUSION

In conclusion, for the reasons discussed, the Court **DENIES** Gardner's § 2255 motion (Dkt. No. 1), and **DISMISSES** this case **WITH PREJUDICE.**

It is so **ORDERED**.

The Court **DIRECTS** the Clerk to enter a separate judgment order, to transmit copies of both orders to counsel of record and the pro se petitioner, certified mail, return receipt requested,

and to strike this case from the Court's active docket.

DATED: June 28, 2019

                                              /s/ Irene M. Keeley
                                              IRENE M. KEELEY
                                              UNITED STATES DISTRICT JUDGE